**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**JUAN MORALES-BRIONES,**

    **Movant/Defendant,**

v.                                                       **No. 12-cv-0420 JEC/SMV**
                                                                 **10-cr-3303 JEC**

**UNITED STATES OF AMERICA,**

    **Respondent/Plaintiff**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Movant/Defendant's Motion under 28 [U.S.C. §] 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody [CV Doc. 1][1] ("Motion" or "Section 2255 Motion"), filed on April 20, 2012. The United States filed its response to the Motion on June 7, 2012. Government's Response to Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [CV Doc. 7] ("Government's Response") at 1. On May 4, 2012, the Honorable John Edwards Conway, Senior United States District Judge, referred the claims raised in the Motion to the undersigned to recommend an ultimate disposition. Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings [CV Doc. 6]. Having considered the parties' submissions, the record in these cases, the relevant

---

[1] Citations that contain "CV" are to documents on the record in case no. 12-cv-0420 JEC/SMV. Conversely, citations to documents that contain "CR" are to documents on the record in case no. 10-cr-3303 JEC.

law, and being otherwise fully advised in the premises, I recommend that the claims raised in the Motion be DENIED and that this case be DISMISSED with prejudice.[2]

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2009, Movant was personally served with a Notice of Intent to Issue a Final Administrative Order ("Notice" or "Notice and Waiver"). [CV Doc. 7-3] at 2. The Notice indicated that Movant, a citizen of Mexico, was not lawfully admitted to the United States for permanent residence, and that he had been convicted in California Superior Court for the offense of "terrorist threats in violation of Section 422 of the California Penal Code," for which he had been sentenced to three years' imprisonment. *Id.* at 1. The Notice also advised Movant that he had the right to obtain counsel, to rebut the charges alleged against him, to request an extension of time, to request review of the government's evidence, and to seek judicial review. *Id.* The Notice further stated that Movant had "the right to remain in the United States for 14 calendar days so that [he] may file a petition for review of this order." *Id.*

On the reverse side of the Notice and Waiver, the immigration agent who served Movant checked a box indicating that he had "explained and/or served this Notice of Intent to [Movant] in the Spanish language." *Id.* at 2. Movant acknowledged receipt of the Notice and Waiver by signing it and by checking certain boxes on the document. *Id.* He checked a box that read, "I Do Not Wish to Contest and/or to Request Withholding of Removal." *Id.* He also checked boxes indicating that he admitted the allegations and charge listed in the Notice and Waiver. *Id.* He acknowledged that he was deportable and that he was ineligible for any form of relief from

---

[2] Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Movant is not entitled to relief, I find that an evidentiary hearing is not necessary. *See* 28 U.S.C. § 2255(b); *see also Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 858–59 (10th Cir. 2005) (evidentiary hearing not required where record is sufficient to rule).

removal. *Id.* Finally, Movant waived his "right to rebut and contest the . . . charges," and, significantly, his right to apply for judicial review. *Id.* Movant was subsequently deported to Mexico on July 31, 2009. Criminal Complaint [CR Doc. 1].

On July 19, 2010, a criminal complaint was filed against Movant in *United States v. Morales-Briones*. *Id.* The complaint alleged that Movant was arrested in Sunland Park, New Mexico, on July 18, 2010, for violating 8 U.S.C. § 1326(a)(1) and (b)(1). *Id.* Upon arrest, he admitted that he was a citizen of Mexico and did not have immigration documents. *Id.* Movant was appointed counsel on the same day. Appointment of and Authority to Pay Court Appointed Counsel [CR Doc. 5].

On December 9, 2010, a one-count information was filed in Movant's criminal proceeding that charged him with having been

> in Doña Ana County, in the District of New Mexico, contrary to law in that on or about July 31, 2009, [Movant] had been deported . . . while an Order of Exclusion, Deportation, and Removal was outstanding, and the [Movant] had not obtained the express consent of the Secretary for Homeland Security to reapply for admission into the United States. In violation of 8 U.S.C. §§ 1326(a) and [](b).

Information [CR Doc. 14]. Movant pleaded guilty to the information that same day. Plea Hearing [Transcript] [CV Doc. 7-1] ("Plea Hearing") at 1, 13–14, 27–28; *see also* Information [CR Doc. 14]. He appeared at the plea hearing with his defense counsel and a certified court interpreter. Plea Hearing [CV Doc. 7-1] at 2; 3–4.

During the plea hearing and prior to Movant's entry of his guilty plea, the Honorable Lorenzo F. Garcia, United States Magistrate Judge, asked Movant if he had been threatened or coerced into pleading guilty. *Id.* at 17. Movant replied that he had not. *Id.* Judge Garcia

explained to Movant the maximum penalties for a conviction under § 1326. *Id.* at 18. Judge Garcia told Movant, "[Y]ou will be deported to your home country after you have served whatever penalty the court orders you to serve." *Id.* at 19. Judge Garcia then asked Movant whether he understood this, to which Movant replied, "Yes." *Id.* at 19. Additionally, Judge Garcia advised Movant that he was retaining his right to appeal his conviction. Specifically, Judge Garcia told Movant that he was "free to appeal and . . . free to collaterally challenge [his] conviction and sentence." *Id.* at 23. Judge Garcia then asked Movant whether he understood these rights, to which Movant responded, "Yes." *Id.*

Judge Garcia found that Movant was "competent and capable of entering into an informed plea; that [he was] aware of the charges and of the consequences of the plea; that [he had] knowingly, willingly and voluntarily entered his plea and [the plea was] supported by an independent factual basis." *Id.* at 28. At the conclusion of the plea hearing, Judge Garcia informed Movant that a Presentence Report ("PSR") would be prepared and that Movant would have the opportunity to comment on and challenge the PSR. *Id.* at 29.

According to the PSR, Movant's total offense level was 21, which included a 16-level enhancement because Movant had previously been "removed subsequent to a conviction for a crime of violence." Government's Response [CV Doc. 7] at 4 (citing to the PSR). It is this enhancement that Movant challenges.

Movant was sentenced on May 5, 2011. Transcript of Sentencing Hearing before The Honorable John Edwards Conway, Senior United States District Judge [CV Doc. 7-2] ("Sentencing Hearing") at 1. He appeared at the sentencing hearing along with defense counsel and a certified court interpreter. *Id.* at 1, 2. Neither Movant nor his counsel raised any objection

4

to the PSR.  Government's Response [CV Doc. 7] at 6.  Judge Conway stated he had reviewed and adopted the PSR, applied the sentencing guidelines, and concluded that Movant's offense level was 21 and his criminal history category was IV.  Sentencing Hearing [CV Doc. 7-2] at 6.  Judge Conway determined that the imprisonment range under the sentencing guidelines was from 57 to 71 months.  *Id.*  Movant's counsel asked Judge Conway to impose the minimum sentence.  *Id.*  Judge Conway then imposed a sentence of 57 months imprisonment, followed by a three-year term of unsupervised release.  *Id.* at 6–7.

Before the sentencing hearing concluded, Judge Conway told Movant, "Pursuant to 18 [U.S.C. §] 3742(a), within 14 days of the entry of the judgment you have the right to appeal the final sentence of this Court.  You have the right to apply for leave to appeal in forma pauperis if you are unable to pay the cost of an appeal."  *Id.* at 7.  Movant, however, filed no appeal.  Section 2255 Motion [CV Doc. 1] at 1.  Movant filed the instant Motion on April 20, 2012.  *Id.*

## II. ANALYSIS

### A. The § 2255 Standard.

A petition under 28 U.S.C. § 2255(a) attacks the legality of a federal prisoner's detention.  *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).  Under § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.

A litigant who appears pro se is entitled to a liberal construction of his allegations, though courts must apply the same legal standards applicable to filings drafted by attorneys.  *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1999) (citations omitted).  However, courts are "not required to fashion [a pro se litigant's] arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]."  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall*, 935 F.2d at 1110.

In his present Motion, Movant generally challenges the 16-level sentence enhancement. Section 2255 Motion [CV Doc. 1] at 6.  He presents a number of arguments to support his claim that the enhancement was improper.  *Id.*  He also raises three claims based on ineffective assistance of counsel.  *Id.* at 4–6.

### B. Movant has Failed to Establish that Judge Conway Impermissibly Relied on Movant's Prior Guilty Plea for his Sentence Enhancement.

Movant first argues that his "plea [in the California case] should not have increased his punishment range."  *Id.* at 6.  He cites to *Shepard v. United States*, 544 U.S. 13, 21–22 (2005), in support of his contention.  *Id.*  Movant's reliance on *Shepard* is misplaced.  In *Shepard*, the defendant was indicted under 18 U.S.C. § 922(g)(1), which bars felons from possessing a firearm.  544 U.S. at 16.  The Government argued that he was subject to the minimum 15-year prison sentence mandated by 18 U.S.C. § 924(e), commonly known as the Armed Career Criminal Act ("ACCA").  *Id*. at 15–16.  Shepard had four prior convictions for burglary, all through guilty pleas.  *Id*. at 16.  The ACCA mandates a 15-year minimum sentence for anyone possessing a firearm after three convictions for serious drug offenses or violent felonies.  *Id*. at 15.  The Government sought to use Shepard's prior convictions as predicate offenses under the ACCA, arguing that burglary is a "violent felony" under the statute.  *Id*. at 16.

However, the ACCA makes burglary a violent felony only if committed in a building or enclosed space ("generic burglary"), not in a boat or motor vehicle. *Id.* at 16–17 (citing *Taylor v. United States*, 495 U.S. 575, 599 (1990)). Shepard had pleaded guilty under a Massachusetts statute that did not limit the definition of burglary to that committed in a building or enclosed space. *Id*. at 16–17. The issue in *Shepard* was whether the sentencing court could examine police reports or complaint *applications* to determine whether Shepard's guilty pleas went to generic burglaries notwithstanding the broader descriptions of the offenses in the complaints themselves, descriptions that tracked the more expansive definition in Massachusetts law. *Id*. at 16. The Supreme Court held that such an examination was impermissible. *Id*. at 26.

*Shepard* did not address 8 U.S.C. § 1326 in any way. To the extent Movant is arguing that the rationale behind *Shepard* should apply in his case, *Shepard* is easily distinguishable. *Shepard* involved the Government's attempt to use extra-judicial documents—not prepared or attested to by the defendant—to establish the nature of the offense to which the defendant had pleaded guilty. That is not the case here. As in *United States v. Rangel de Aguilar*, 308 F.3d 1134, 1137 (10th Cir. 2002), the finding that Movant validly waived his right to appeal his deportation order (see discussion at pp. 8–12, *infra*) is based on a document signed by and, to a large degree, verified by the Movant himself. The Tenth Circuit has expressly held that the validity of a defendant's waiver of his right to appeal a deportation order can be based on the Notice and Waiver form signed by the serving immigration officer and the defendant, at least in the absence of any evidence to refute the attestations contained therein. *Rangel de Aguilar*, 308 F.3d at 1139. Therefore, Movant's reliance on *Shepard* is misplaced.

### C. Movant has Failed to Establish That His Waiver of Judicial Review of the Underlying Removal Order Was Invalid.

#### 1. Standard for Determining Validity of Waiver

Due process rights in a removal proceeding may be waived. *See Rangel de Aguilar*, 308 F.3d at 1138 (10th Cir. 2002) (adopting the rule from *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999)). A defendant may not collaterally challenge an order of removal that supports a § 1326 prosecution if the defendant has validly waived his right to judicial review of the removal order. *Id.* at 1139. However, the waiver of such right must be "knowing and voluntary." *Id.* at 1137; *see also United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (defendant could not collaterally attack his underlying deportation order because he "knowingly waive[d]" his right to appeal the prior removal order).

For example, in *Rangel de Aguilar*, the defendant was prosecuted for violating 8 U.S.C. § 1326(a) and (b)(2). 308 F.3d at 1135. The defendant, a citizen of Mexico, entered the United States without proper documentation or permission in 1974. *Id.* at 1135. In 1998, she was convicted in California for possession and sale of a controlled substance. *Id.* In 1999, an immigration agent served the defendant with a Notice of Intent to Issue Final Administrative Removal Order ("Notice"). *Id.* The Notice set forth the charge against her, the allegations on which the charge was based, and her rights, including "the right to be represented by counsel, to request an extension of time, to rebut the charges, to request review of the government's evidence, and to seek judicial review." *Id.* The immigration agent indicated on the Notice that he had "explained and/or served" the form to the defendant in Spanish. *Id.* at 1136. The defendant

8

> completed the "I DO NOT WISH TO CONTEST" box, signing to indicate that she admitted the allegations and charge in the Notice, and that she was deportable and not eligible for any form of relief. She waived her right to rebut and contest the charges, as well as her right to judicial review of the final removal order. The entire process took less than half an hour.

*Id.* She was subsequently deported to Mexico. *Id.*

The defendant re-entered the United States in 2000, was arrested by Kansas law enforcement, and indicted for violating § 1326. *Id.* She moved to dismiss the indictment, maintaining that "the procedure employed in her prior deportation violated her due process rights because the purported waiver lacked any audible record, was taken by agents of the prosecuting entity, and was not made in open court before a neutral immigration judge." *Id.* The district court denied the motion; defendant pleaded guilty and then appealed. *Id.*

The Tenth Circuit Court of Appeals held that the defendant could not challenge her underlying removal order because she had failed to establish that her waiver was not knowing and voluntary. *Id.* at 1137. Specifically, the court found that defendant had "no basis for collaterally attacking her deportation proceeding" where she had offered no evidence to show that "the [immigration] agent . . . coerced [defendant] into waiving her rights," that she did not "understand the nature of the rights available to her," or that "the [immigration] agent's characterization of those rights was misleading." *Id.* at 1139. Accordingly, her conviction was affirmed. *Id.* at 1139.

### 2. Movant Knowingly and Voluntarily Waived Judicial Review of His Removal Order.

Liberally construing Movant's claim, he seems to argue that Judge Conway erred in applying the 16-level sentence enhancement because Movant did not validly waive judicial

9

review of his prior removal order. *See* Section 2255 Motion [CV Doc. 1] at 6. He cites to *United States v. Rodriguez-Ocampo*, 664 F.3d 1275 (9th Cir. 2011), in support of this argument. *Id.*

In *Rodriguez-Ocampo*, the Ninth Circuit Court of Appeals held that the sentencing court erred when it applied a 16-level sentence enhancement where the defendant's waiver of judicial review of the underlying removal order (on which the enhancement was predicated) was invalid. *Rodriguez-Ocampo*, 664 F.3d at 1278–79. Liberally construing Movant's claim that the sentence enhancement was misapplied, in combination with his citation to *Rodriguez-Ocampo*, the Court infers that Movant contends that he invalidly waived judicial review of his prior removal order, and, therefore, the 16-level enhancement (which was based on his prior removal order) was improper.[3] However, Movant's reliance on *Rodriguez-Ocampo* is misplaced. This Court need not look to the Ninth Circuit when there is Tenth Circuit caselaw directly on point. *See, e.g.*, *Rangel de Aguilar*, 308 F.3d at 1135, 1137 (applying the Tenth Circuit's "knowing and voluntary" standard to defendant's waiver, which was filled out in California subsequent to a crime committed in California).

The facts of Movant's case are nearly identical to those in *Rangel de Aguilar*. The waiver that Movant signed in this case included the same notices of rights as the waiver in *Rangel de Aguilar*. And here, as in *Rangel de Aguilar*, Movant has presented no evidence that he was coerced into waiving his rights, that the immigration agent mischaracterized his rights, or

---

[3] Movant concedes that there may be a factual distinction between his case and *Rodriguez-Ocampo* in that here, Movant cannot recall whether he had a "stipulated" removal under 8 U.S.C. § 1229a(d), or an "expedited" removal under 8 U.S.C. § 1228(b)(1), whereas in *Rodriguez-Ocampo* the defendant had been removed pursuant to a stipulated removal. Motion [CV Doc. 1] at 6. Movant apparently does not consider the factual distinction to be important to the question of whether his waiver was valid, however, and instead focuses on his argument that he was unaware of his right to challenge his prior removal order. *Id.*

that he did not understand the nature of rights available to him. As in *Rangel de Aguilar*, Movant's collateral attack on the removal order that underlies his sentence enhancement must fail because he has failed to allege facts that would show the waiver was not knowing and voluntary. *See Rangel de Aguilar*, 308 F.3d at 1138–39.

Movant attempts to challenge the validity of the waiver by alleging that he was "unaware that he had any rights available to him to fight his deportation." Section 2255 Motion [CV Doc. 1] at 6. To the extent that Movant alleges that he was "unaware" of the right to challenge his prior removal, his claim is without merit. The Notice and Waiver, which Movant signed, enumerated all the rights that were enumerated in *Rangel de Aguilar*, including the right to "rebut the charges" and "the right to remain in the United States . . . [to] file a petition for review of this order," Notice and Waiver [CV Doc. 7-3] at 1, and, as in *Rangel de Aguilar*, the immigration agent who served Movant with the Notice and Waiver explained the form to him in Spanish, *id.* at 2. Movant does not explain how, if at all, the agent failed to make him aware of his right to challenge the removal order. Simply alleging in conclusory terms that he was unaware of a right to challenge the removal not establish that Movant's waiver of those rights was not knowing and voluntary. *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Therefore, because his waiver was valid, Movant has failed to show that the sentence imposed by Judge Conway violated the Constitution or the laws of the United States.

### D. Movant has Failed to Establish Ineffective Assistance of Counsel in any of his Remaining Claims.

In evaluating a claim for ineffective assistance of counsel, a court must measure defense counsel's performance by the two-pronged standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective-assistance claim, a movant must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687-88. Both showings must be made to satisfy the *Strickland* standard. *Id.* at 687. To demonstrate unreasonable performance, the movant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, the movant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The court is not required to address both prongs of the *Strickland* standard if the movant makes an insufficient showing on one of the prongs. *Id.* at 697; *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir. 2010).

#### 1. Defense Counsel's Failure to Object to the 16-Level Sentence Enhancement was not Objectively Unreasonable, nor did it Prejudice Movant.

Movant's first claim of ineffective assistance of counsel is that his defense counsel failed to object to the sentence enhancement. Section 2255 Motion [CV Doc. 1] at 6. This claim is without merit. First, Movant fails to show that his counsel's failure to object constitutes an error so serious that the representation could not be considered reasonable. Because Movant had

validly waived his right to collaterally challenge the underlying removal order, as discussed *supra*, any objection by his counsel to the sentence enhancement based on the underlying removal order would likely have been futile.

Second, even if Movant's defense counsel's failure to object to the enhancement were objectively unreasonable, Movant has not shown that he was prejudiced by such failure. Movant's waiver of his right to collaterally challenge his removal order was valid. The sentence enhancement was based on that removal order. Therefore, even if defense counsel had objected to the 16-level enhancement, there is no reason to believe that the result would have been any different. There is no reason to believe that Judge Conway would have sustained an objection to the enhancement, given that Movant had validly waived his right to collaterally attack the underlying removal order. Movant has not shown that, but for his counsel's failure to object, he would not have received the 16-level sentence enhancement. His claim for ineffective assistance of counsel based on his defense counsel's failure to object to the sentence enhancement fails.

### 2. Defense Counsel's Alleged Failure to Inform Movant That a Guilty Plea Would Result in Deportation did not Prejudice Movant.

Movant's second claim of ineffective assistance of counsel is that his defense counsel never informed him that entering a guilty plea would result in his deportation. Section 2255 Motion [CV Doc. 1] at 4. He states that "had he known he would be deported he would never have entered into the guilty plea." *Id.* He relies on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), in which the Supreme Court held that the right to effective assistance of counsel requires defense counsel to notify a non-citizen defendant of the potential adverse immigration consequences of a plea of guilty. *Id.*

Assuming that defense counsel did not advise Movant that his guilty plea would result in deportation, and assuming that such omission fell below an objective standard of reasonableness, Movant's claim fails because he has not shown—and cannot show—that he was prejudiced by such failure. Though he alleges otherwise, the record establishes clearly that Judge Garcia informed Movant that he would be deported if he pleaded guilty. Plea Hearing [CV Doc. 7-1] at 18–19. Moreover, Movant unequivocally stated that he understood this particular consequence of his guilty plea. *Id.* at 19; *see also Blackledge v. Allison,* 431 U.S. 63, 74 (1977) (a defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity," which form a "formidable barrier in any subsequent collateral proceedings"). Thus, even if defense counsel failed to inform him that deportation was a likely consequence of a guilty plea, such failure was of no consequence, and this defeats Movant's ineffective-assistance claim. The claimed prejudice, that Movant would have opted for a jury trial rather than pleading guilty "had he known he would be deported," cannot succeed where Movant acknowledged at his plea hearing that he *did* understand that deportation would result from pleading guilty.

The holding in *Padilla* does not alter the analysis. In *Padilla*, the Supreme Court held that in certain situations, defense counsel is required to inform her client whether a guilty plea carries a risk of deportation, and that to omit such warning amounts to representation that falls below an objective standard of reasonableness. 130 S. Ct. at 1483. The Supreme Court did *not*, however, state that counsel's failure to inform her client of deportation as a consequence of a

guilty plea was per se prejudicial. The Court never addressed the prejudice prong of the *Strickland* standard. *Id.* at 1483–84. Therefore, Movant's reliance on *Padilla* is misplaced.[4]

### 3. Defense Counsel's Alleged Failure to Inform Movant of His Right to Appeal did not Prejudice Movant.

Movant's third and final claim of ineffective assistance of counsel is that his defense counsel failed "to give Movant the understanding that he [could] file a Writ of Certiorari with the US Supreme Court." Section 2255 Motion [CV Doc. 1] at 5. Moreover, "[c]onsidering the seriousness of the issue being appealed, the [m]inimum professional requirement of Movant's counsel was to inform him of all legal options available to him [at] each stage of his legal proceedings." *Id.* Movant argues that had he "chosen to appeal his case to a higher court, the result of his conviction may well have turned differently." *Id.* This claim is without merit as well. Even assuming for the sake of argument that defense counsel's representation fell below an objective standard of reasonableness, Movant still has not established the prejudice prong of *Strickland*. He was advised of his right to appeal at his plea hearing and again at his sentencing. Plea Hearing [CV Doc. 7-1] at 23; Sentencing Hearing [CV Doc. 7-2] at 7. He acknowledged that he understood that right on each occasion. Plea Hearing [CV Doc. 7-1] at 23; Sentencing Hearing [CV Doc. 7-2] at 7. There is no reason to believe that Movant would have opted for a jury trial had he been informed of his right to appeal three times rather than merely twice. Therefore, even if Movant's defense counsel failed to notify him of his right to appeal, and even if such omission fell below an objective standard of reasonableness, Movant's

---

[4] Under this claim of ineffective assistance of counsel, Movant also asserts that he does not speak English. Section 2255 Motion [CV Doc. 1] at 4. To the extent that Movant is attempting to buttress his prejudice argument on this basis, I find it unavailing because a court interpreter was present throughout Movant's plea hearing. *See* Plea Hearing [CV Doc. 7-1] at 3–4 (Judge Garcia noted that "[t]he interpreter is present and is assisting [Movant] with interpretive skills. The interpreter was sworn at the commencement of the Docket.").

ineffective-assistance claim based on his counsel's alleged failure to inform him of his right to appeal should be denied for failure to show prejudice.

## CONCLUSION AND RECOMMENDED DISPOSITION

For the foregoing reasons, I find that Movant has failed to show that his sentence violates the Constitution or the laws of the United States, or that his defense counsel's representation was constitutionally ineffective. I therefore **RECOMMEND** that Movant's Motion under 28 [U.S.C. §] 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody [CV Doc. 1] be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**